UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,       :                 17 CR 89 (CS)


               v.               :


CHRISTOPHER LONDONIO, et al.,    :


             Defendants.  :
-------------------------------------------------------X




MEMORANDUM OF LAW
IN RESPONSE  TO THE GOVERNMENT'S
SUPPLEMENTAL MOTIONS *IN LIMINE*




MERINGOLO & ASSOCIATES, P.C.
John C. Meringolo, Esq**.** (JM3487)
116 West 23rd Street, Suite 5100
New York, New York 10011
Direct No. (347) 599-0992


FREEMAN, NOOTER & GINSBERG
Louis M. Freeman, Esq.
75 Maiden Lane, Suite 503
New York, New York 10038
(212) 608-0808

*Attorneys for Defendant*

*Christopher Londonio*

i

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

DISCUSSION...............................................................................................1-11

   I.   The Government Should be Prelcuded from Elticitng Testimony of CW-3 Concerning

       Alleged Statements Made by Londonio to CW-3 ......................................................1-9

       A. CW-3's ████████████████████████ ...............1-3

       B. The Londonio Statements are not Sufficiently Corroborated Pursuant to Federal Rule

          of Evidence 804(b)(3) III..........................................................................3-8

       C. The Government should be Precluded from Eliciting the Londonio Statements from

          CW-3 and should be Ordered to Produce any Notes, Reports and/or Documents

          Concerning CW-3's ██████████████████████████.………..…8-9

   II.   The Court should Deny the Government's Request to Limit Alternative Perpetrator
      Evidence ....................................................................................................9-11

   CONCLUSION ...................................................................................................11

## INTRODUCTION

We write on behalf of Christopher Londonio to respond to the Government's Memorandum of Law in Support of its Supplemental Motions in Limine, specifically 1) the motion to admit the testimony of CW-3 regarding statements allegedly made by Mr. Londonio to CW-3 and 2) the motion to preclude speculative alternate perpetrator theories.

## DISCUSSION

**I.    THE GOVERNMENT SHOULD BE PRECLUDED FROM ELICITING TESTIMONY OF CW-3 CONCERNING ALLEGED STATEMENTS MADE BY LONDONIO TO CW-3**

The Government moves for the admission of alleged statements made by Londonio to CW-3 while they were both incarcerated at the Metropolitan Detention Center.  The Government asserts that they were cellmates who "became close while incarcerated together, and Londonio spoke to CW-3 frequently about his role in the murder of Michael Meldish, his plan to escape from the MDC (with CW-3), and his drug trafficking activities, among other topics." Gov't MIL, 6.[1]  At the outset, it is worth noting that it is our understanding that Londonio and CW-3 were never cellmates.  During the relevant period which we believe is the summer of 2017 (as Londonio was placed in the Special Housing Unit after the superseding indictment filed on September 13, 2017), Londonio was housed in a cell with an individual named ███████ ██████  while CW-3 was housed in ██████

**A.  CW-3's** ████████████████████████████████

All of the statements that CW-3 attributes to Londonio were not recorded and are not reliably corroborated by other evidence. ████████████████████████

---

[1] All page references to the Government's Memorandum of Law in Support of its Supplemental Motion in Limine ("Gov't MIL") are to the page numbers located in the ECF header and not page numbers located at the bottom of the page.



any statements he attributes to Londonio must be analyzed with a heightened level of scrutiny.

In Crea Jr.'s bail hearing on August 3, 2018, the Court questioned Londonio's admissions to

CW-3 ("So isn't it a little weird that he never implicated himself to, you know, his family

member, but he did to this other rando that he met in the jail?").  <u>Transcript of Proceedings,</u> August 2, 2018, 95.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████    In addition, information regarding the Meldish murder was widely available in the media at the end of May 2019.  <u>See</u>, <u>Exhibit B</u>, NY Post and NY Daily News Articles dated May 31, 2019.  Such articles contained the Government's theories regarding the hierarchy of the "Lucchese crime family" and the Meldish murder-  the alleged topics of conversation between Londonio and CW-3.

**B.  The Londonio "statements" are not sufficiently corroborated pursuant to Federal Rule of Evidence 804(b)(3)**

The Government moves to admit the Londonio statements as statements against penal interest pursuant to Federal Rule of Evidence 804(b)(3),  with the exception of one of statement which it also moves to admit as an excited utterance pursuant to Federal Rule of Evidence 803(2). For the reasons set forth below, the statements are not admissible on either ground.

Federal Rule of Evidence 804(b)(3) provides that a statement against interest is not excluded by the rule against hearsay if the declarant is unavailable as a witness.  A "statement against interest" is defined as a statement that:

(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

To admit statements pursuant to 804(b)(3) the court must find that 'corroborating circumstances *clearly* indicate the trustworthiness of the statement.' *United States*

> *v. Katsougrakis*, 715 F.2d at 775 (emphasis added); *see United States v. Satterfield*, 572 F.2d 687, 693 (9th Cir.) (corroborating circumstances must do more than tend to indicate the trustworthiness of the statement, they must clearly indicate it), *cert. denied*, 439 U.S. 840, 58 L. Ed. 2d 138, 99 S. Ct. 128 (1978). There must be circumstances solidly indicating trustworthiness; minimal corroboration is not enough. *United States v. Hoyos*, 573 F.2d 1111, 1115 (9th Cir. 1978); *United States v. Barrett*, 539 F.2d 244, 253 (1st Cir. 1976).

United States v. Payden, 623 F. Supp. 1148, 1153 n.13 (S.D.N.Y. 1985) (emphasis in original).

> [E]ven where the court has properly found that a particular statement is against the declarant's own penal interest within the meaning of Rule 804(b)(3)(A), the court must then determine whether there are 'corroborating circumstances that clearly indicate,' Fed. R. Evid. 804(b)(3)(B), 'both the declarant's trustworthiness and the truth' of the statement," *United States v. Lumpkin*, 192 F.3d 280, 287 (2d Cir. 1999). For those conditions to be satisfied, "the inference of trustworthiness from the proffered 'corroborating circumstances' must be strong, not merely allowable." *United States v. Salvador*, 820 F.2d 558, 561 (2d Cir.), *cert. denied*, 484 U.S. 966, 108 S. Ct. 458, 98 L. Ed. 2d 398 (1987).

United States v. Ojudun, 915 F.3d 875, 887 (2d Cir. 2019).

The Government asserts that 1) the statement that "Meldish became disrespectful to the 'boss,' who then ordered his murder," id., is corroborated by the statement of Joseph Datello to CW-2, 2) the statement that "Londonio recruited 'a black guy' named 'Terry' to shoot Meldish, while he served as the getaway driver" is corroborated by "video surveillance, cell site evidence, phone records, and DNA evidence from the night of the murder," 3) the statement that "Crea Sr. and Crea Jr. were involved in the same murder as him and conveyed the order to kill Meldish to him" is corrobated by evidence showing Crea Jr.'s alleged role as Londonio's captain and Crea Sr.'s alleged role as the Lucchese Family's second-in-command and 4) the statement that "Londonio felt used by the people who gave him the order to kill Meldish, because they knew he was friendly with Meldish, which would afford easy access to Meldish" is corroborated by other

evidence that Meldish and Londonio were close.[2]  We will review the purported corroboration *seriatim*.

i.          *"Meldish became disrespectful to the 'boss,' who then ordered his murder"*

The Government asserts that the statement regarding Meldish's disrespect to the boss and the subsequent order for his murder are corroborated by statements made in an August 18, 2014 recording between CW-2 and Joseph Datello.  In this recording, CW-2 and Datello are discussing what they "heard" about the Meldish murder.  In fact, it is Datello who states "they clipped him" but the CW who states "I know he did. I know Matty did" and "I heard, I heard from two different people, that the Mat—that he told matty, "Go get the money yourself." They found him dead." Docket Entry 584, Ex. 5, 28-33.

Such statements cannot serve as corroboration to the statement Londonio allegedly made that Meldish became disrespectful to the "boss," who then ordered his murder as they consist of idle chatter and gossip both by the cooperating witness seeking to acquire information for the Government and his target, Joseph Datello.  Idle chatter and gossip cannot strongly indicate the trustworthiness of the statement. See, Federal Rule of Evidence 804(b)(3); United States v. Ojudun, 915 F.3d 875, 887 (2d Cir. 2019); United States v. Payden, 623 F. Supp. 1148, 1153 n.13 (S.D.N.Y. 1985).

ii.          *"Londonio recruited 'a black guy' named 'Terry' to shoot Meldish, while he served as the getaway driver"*

The Government asserts that the alleged admission to the murder is corroborated by the Government's proffered evidence of the murder of Michael Meldish, including video

---

[2] Londonio concedes that there are multiple recordings from the MDC where he appears to be angry because he believes Matthew Madonna is telling people that he is a "rat."  See, Gov't MIL, 6.  However, we do not concede to the admissibility of such recordings or that any such statement was made to CW-3.

surveillance, cell site evidence, phone records and DNA evidence.  Each piece of evidence that the Government references is circumstantial evidence and therefore insufficient to clearly indicate the trustworthiness of the statement.  See, id.

Even assuming *arguendo* that the Government's evidence placed Caldwell and Londonio together shortly after the murder that does not provide corroboration that Londonio recruited "Terry" to shoot Meldish while he served as the getaway driver.  Similarly, the surveillance video (even if it shows Londonio's vehicle driving towards the scene of the murder shortly before the murder took place), does not provide corroboration for a statement that Londonio was the getaway driver.

### iii. *"Crea Sr. and Crea Jr. were involved in the same murder as him and conveyed the order to kill Meldish to him"*

The Government asserts that evidence regarding the alleged roles of Crea Sr. as second in command of the Lucchese Family and Crea Jr. as captain, corroborates the statements that the Creas were involved in the same murder as Londonio and that they conveyed the order to kill Meldish.  Such evidence does not clearly indicate the trustworthiness of the statement that the Creas were involved in the Meldish murder and conveyed the order to Londonio to kill Meldish; therefore it does not corroborate the statement under Federal Rule of Evidence 804(b)(3).  See, Federal Rule of Evidence 804(b)(3); Ojudun, 915 F.3d at 887; Payden, 623 F. Supp. at 1153 n.13.

The Government also asserts that the statement is admissible under the excited utterance exception to the hearsay rule.  Pursuant to Federal Rule of Evidence 803(2), "a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" it not excluded by the rule against hearsay.  Here, the Government asserts that the

statement was made after "Londonio returned to the cellblock from a visit with his mother and was 'irate' upon learning (incorrectly) that Crea Sr. and Crea Jr. had received bail. This news—that the people who had ordered him to kill Meldish—had been released on bail, while he remained in custody for the murder, was unexpected and understandably upsetting to Londonio." Gov't MIL, 9.

However, this argument ignores evidence that on June 21, 2017, Londonio learned from Ann Meldish that both Crea Sr. and Crea Jr. were released on bail and he was happy for them. The following is a transcript of an excerpt of a recorded jail call placed by Londonio to Ann Meldish on directly contradicts any such claim:

> CL: Most of them are out on bail. Is the one you like, is he here?
> AM: I like so many. Which one you're referring to?
> CL: The one you said you said that day I don't care who's listening he's hot?
> AM: I thought he was out on bail.
> CL: No is he? No Joey is but not the other guy.
> AM: Yea.
> CL: Who's out on bail?
> AM: The gentleman that's 69 years old, he's not…I thought Brenda told me he was out on bail.
> CL: Check. I don't…she's nuts.
> AM: The father and the son are not out on bail?
> CL: I don't know, are they?
> AM: That's what she told me, she asked me if I knew how much bail they got. I says I didn't even know they made bail.
> CL: He told me no the other day, my lawyer. Check.
> AM: They're not in the federal system and Valhalla…
> CL: That's great if they did. God bless 'em. Holy shit.

Phone call to Ann Meldish, June 21, 2017, 2:10:20 PM (timestamp 6:54 through 7:58) produced in Discovery Production 14, Folder 6, Jail Calls and Documents, Bates numbers 242996 through 244418.

"The hearsay exception for excited utterances is premised on a similar, though distinct, assumption that the reliability of a statement increases as opportunity for reflection by the declarant decreases." United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002). Based on the

7

recording of the phone call with Mrs. Meldish, Londonio was made aware of the fact that the Creas were released on bail as of June 21, 2017.  On that date, he expressed that he was happy for them.  It is clear from the recording, especially  the above excerpt ,that Londonio had no knowledge of whether or not the Creas were out on bail prior to this phone call.  When asked by Mrs. Meldish whether the father and son are out on bail, he responds "I don't know, are they?"

Therefore, even if Mrs. Londonio informed her son that the Creas had been granted bail, he would have already known this information and therefore there would be no startling event which was unexpected and upsetting to Londonio.  Accordingly, this statement does not meet the requirement of Fedearl Rule of Evidence 803(2).

    iv.    *"Londonio felt used by the people who gave him the order to kill Meldish, because they knew he was friendly with Meldish, which would afford easy access to Meldish"*

While Londonio does not contest the fact that he knew Michael Meldish, any evidence that seeks to establish that Londonio and Meldish were "close" does not clearly indicate the trustworthiness of the statement that he felt used by the people who gave him the order to kill Meldish because they knew he was friendly with Meldish.  <u>See</u>, Federal Rule of Evidence 804(b)(3); <u>Ojudun</u>, 915 F.3d at 887; <u>Payden</u>, 623 F. Supp. at 1153 n.13.

**C.  The Government Should be Precluded from Eliciting The Londonio  Statements from CW-3 and Should be Ordered to Produce any Notes, Reports and/or Documents Concerning CW-3's Mental Health History and Drug Use History**

Because the statements the Government intends to offer through CW-3's testimony are not corroborated within the meaning of Federal Rule of Evidence 804(b)(3) and the statement regarding the Creas' involvement is not an excited utterance pursuant to Federal Rule of Evidence 803(2), the Government should be precluded from eliciting these statements.  The corroboration requirement exists to ensure that the statements against penal interest have an

indication of trustworthiness so as to protect the defendant's rights under the Confrontation Clause.  The admission of the statements allegedly made by Londonio to CW-3, which are essentially uncorroborated admissions to conspiring to kill Michael Meldish, would run so contrary to the rights guaranteed under the Sixth Amendment as to render a fair trial impossible.

In the interests of efficiency and fairness, we request that the Government be ordered to provide the defendants with any and all notes, reports and other documents in its possession regarding CW-3's mental health and drug addiction issues so we may supplement this motion  as necessary (as referenced in the Court's 8/2/19 Order, docket entry 763).

## II.  THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO LIMIT ALTERNATIVE PERPETRATOR EVIDENCE

The Government concedes that the defense has a Sixth Amendment right to cross examine witnesses about alternative perpetrators but requests this Court issue a pretrial ruling limiting the questions the defense seeks to utilize to support its argument that someone else may have committed the Meldish murder.  See, Gov't MIL, 23.  A restriction on a defendant's confrontation rights can rise to a constitutional violation if it is "arbitrary or disproportionate to the purposes [the restriction is] designed to serve."  Michigan v. Lucas, 500 U.S. 145, 151, 114 L. Ed. 2d 205, 111 S. Ct. 1743 (1991) (quoting Rock v. Arkansas, 483 U.S. 44, 56, 97 L. Ed. 2d 37, 107 S. Ct. 2704 (1987)).

The Government's request that defendant provide a pretrial proffer establishing a nexus between alternative suspects and their involvement in the murder reaches too far and impinges on Mr. Londonio's confrontation rights and his right to present a defense.

The defense must be permitted to ask any questions permitted by Federal Rule of Evidence 611(b) that are within the scope of the direct, go to credibility, and any other questions that the Court permits in its discretion.  United States v. Wilkerson, 361 F.3d 717, 734 (2d Cir.)

9

(*quoting* <u>United States v. Fabian</u>, 312 F.3d 550, 558 (2d Cir. 2002)), *cert. denied*, 543 U.S. 908, 125 S. Ct. 225, 160 L. Ed. 2d 185 (2004).  Counsel are entitled to "considerable leeway in cross examination." <u>United States v. Birnbaum</u>, 337 F.2d 490, 498 (2d Cir. 1964). Cross examination should be reasonably related to direct and, therefore, within the scope of the direct and permissible under Rule 611(b).  <u>See</u>, <u>United States v. Caracappa</u>, 614 F.3d 30, 43 (2d Cir. 2010) (defendants have broad latitude and their cross need only be "reasonably related" to the direct examination).  Limitation beyond a reasonably related rule amounts to an arbitrary limitation on the confrontation rights of the defendants and must be rejected.  However, should law enforcement agents testify about measures they took to investigate the murder, the defense must be permitted to question the agent regarding any measures the agent took.  Questions such as this are reasonably related to the investigation into the Meldish homicide and do not raise any of the concerns of 611(b) such as wasting time, harassing or embarrassing witnesses.

The Government also requests limits on the introduction of evidence through government witnesses based on the premise that the defense can only introduce alternative perpetrator evidence with a direct, substantial connection between the alleged third-party perpetrator and the crime charged and that defendants have a right to show innocence through alternative perpetrator evidence only if they establish a "nexus" between the crime charged and the alternative perpetrator through the proffered evidence on its own or in combination with other evidence. <u>See</u>, Gov't MIL, 24.  However, the Government's premature and overbroad request to preclude questioning on relevant alternative perpetrator evidence would curtail the defendant's ability to establish this nexus if granted at this stage. <u>See</u>, <u>Wade v. Mantello</u>, 333 F.3d 51, 61-62 (2d Cir. 2003) (citation omitted); <u>see</u> <u>also</u>, <u>Chambers v. Mississippi</u>, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) (a court's rigid application of hearsay rules to

preclude evidence of a properly established third-party culpability defense may violate a defendant's constitutional right to a fair trial).

Cross examination into alternative perpetrator evidence is patently relevant to the case. It is expected to be reasonably related to the anticipated testimony, and/or will speak directly to the credibility of witnesses. At a minimum, "criminal defendants have the right . . . to put before a jury evidence that might influence the determination of guilt." *Taylor v. Illinois,* 484 U.S. 400, 408, 98 L. Ed. 2d 798, 108 S. Ct. 646 (1988) (*quoting* Pennsylvania v. Ritchie, 480 U.S. 39, 56, 94 L. Ed. 2d 40, 107 S. Ct. 989 (1987)). Evidence in this case of alternative perpetrators is not "unsupported speculation." The government concedes "various parties in addition to the defendants had a motive to kill Meldish." Gov't MIL, 24. The defense must be permitted to elicit admissible evidence that other people may have been involved in the murder, including but not limited to statements against penal interest that others admitted to the crime.

## CONCLUSION

For the reasons stated above, the Government should be precluded from admitting the testimony of CW-3 regarding statements allegedly made by Mr. Londonio to CW-3 and the defendants should not be limited in their ability to pursue alternative perpetrator evidence.

Defendant Londonio joins in the responses made by Defendants Steven Crea Sr. and Steven Crea Jr. to the extent any such arguments are applicable to him.

11