LAW OFFICES OF
# DRATEL & LEWIS

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006

TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: jdratel@dratellewis.com

JOSHUA L. DRATEL
LINDSAY A. LEWIS

ACHARA AMY SCHRODER
*Paralegal*

AMY E. GREER
JACOB C. EISENMANN

August 6, 2025

**FILED UNDER SEAL**

The Honorable Cathy Seibel
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

           Re:    *United States v. Matthew Madonna*,
                     S3 17 Cr. 89 (CS)

Dear Judge Seibel:

      This letter is submitted in regard to defendant Matthew Madonna, whom Andrew G. Patel, Esq., and I represent in the above-entitled case, and constitutes Mr. Madonna's reply to the government's July 9, 2025, letter opposition ("Gov't Opp.") to his June 6, 2025, motion, pursuant to 18 U.S.C. §3582(a)(1)(C), to modify his sentence.. *See also* ECF #s 1315-1317 (redacted). This letter, like Mr. Madonna's initial motion papers, is filed under seal because it includes sensitive personal medical information about him. A redacted version is being prepared and will be filed publicly this week.

      As discussed below, the government's opposition would reduce Mr. Madonna's five-year extensively documented history of medical ███████████████████ to the notations in his Bureau of Prisons ("BOP") medical records for merely the month between the filing of this motion and the government's response.

      That type of cherry-picking – isolating a half-dozen entries – is facile in the context of more than *1,000* pages of medical records that detail the several serious conditions from which Mr. Madonna continues to suffer, and the expert evaluation provided by Dr. Isabel Chen in her Declaration (attached as Exhibit 1 to Mr. Madonna's Initial Memo).

| | |
|---|---|
| LAW OFFICES OF<br>**DRATEL & LEWIS, P.C.** | Hon. Cathy Seibel<br>United States District Judge<br>Southern District of New York<br>August 6, 2025<br>Page 2 of 11 |

   The government's opposition also seeks to minimize the impact of those conditions by essentially dismissing Dr. Chen's Declaration, ignoring entirely Dr. Chen's extensive experience – even in a carceral setting – without providing *any* contrary expert analysis.  Instead, the government posits a series of unsupported lay opinions absent any forensic basis.

   Also, while the government addresses Mr. Madonna's alternative grounds individually, *see* Gov't Opp., at 10, it ignores the Sentencing Guidelines provision, §1B1.13(b)(5), that expressly directs that a *combination* of factors can establish "extraordinary and compelling reasons" for modification of sentence.  *See* Mr. Madonna's Initial Memo of Law ("Initial Memo"), at 3-4.

   Ultimately, the government relies on the nature of the offense and the repeated canard – three different times – that Mr. Madonna serves as the *current* "acting boss" of an organized crime family, ignoring entirely the contrary, uncontroverted evidence provided in Mr. Madonna's Initial Memo, at 90.

**I.**  *The Government's Denigration of Medical Expertise Demonstrates the Weakness of Its Opposition to Mr. Madonna's Motion*

   The government cannot rebut Dr. Chen's comprehensive Declaration ("Dr. Chen's Dec.") – based on reviewe of more than 900 pages of Mr. Madonna's BOP medical records – detailing Mr. Madonna's medical conditions, their impact on his health, and the prognosis for him. Instead, the government attempts to denigrate Dr. Chen's undisputed medical expertise by claiming Dr. Chen ""merely summarized the information in Madonna's medical records – a task the Court is equally capable of doing."  Gov't Opp., at 9.

   It is respectfully submitted that professional expertise cannot be so cavalierly dismissed. As a threshold matter, lawyers, and even judges, do not have specialized medical training (which is why counsel engaged Dr. Chen's services).  In contrast, Dr. Chen, has vast and particularly relevant experience and experience, including "a combination of primary care, urgent care, and addiction medicine[,]" as well as for individuals "in detention at the Los Angeles County Jail (Twin Towers) through the Los Angeles Department of Health Services through provision of primary and specialty addiction medicine care."  Dr. Chen's Dec., at ¶ 1.

   Dr. Chen's residency in Family Medicine at the Kaiser Permanente Los Angeles Medical Center also provided her "extensive experience in history taking and physical examination of all individuals across the lifespan from newborns, children, adults, and end of life care." *Id*. at ¶ 2.  In addition, she holds a Master's Degree in Public Health from Yale University, and through that course of study she "learned about the impact of complex trauma and violence on

LAW OFFICES OF
**DRATEL & LEWIS, P.C.**

Hon. Cathy Seibel
United States District Judge
Southern District of New York
August 6, 2025
Page 3 of 11

individuals' health and outcomes in life." *Id*.

Thus, Dr. Chen's experience renders her eminently more qualified to comment on Mr. Madonna's BOP medical records, and their implications.[1] In addition, Dr. Chen's meticulous review included *five years* of Mr. Madonna's medical history, including Mr. Madonna's physical examinations at various facilities, lab results and biopsies, numerous sick calls, and hospitalization records. *See id.*, at ¶¶ 6-17.

Dr. Chen's Declaration also highlights Mr. Madonna's health trends over time, *i.e.*, his ▮▮▮▮, based on the BOP medical records – scattered and fragmented over the course of his confinement at three different facilities – and her professional knowledge and experience regarding *what those records mean*.

Thus, the government's claim that "[t]he Government obtained the defendant's medical records," Gov't Opp., at 5, ignores the fact that Dr. Chen reviewed Mr. Madonna's medical records through the end of January 2025, and Mr. Madonna's Initial Memo was based on *all* of his BOP medical records *except for the month following the filing of this motion*.

Thus, contrary to the government's spurious claim that Dr. Chen relied on "outdated" medical records, *see* Gov't Opp., at 9, Dr. Chen based her findings on the *entirety* of Mr. Madonna's BOP medical records at the time of her Declaration (in late January 2025), which were not magically eclipsed by an uneventful month after this motion was filed. Nor did Mr. Madonna during that month experience a miraculous recovery from the several fully documented conditions that afflict him, and have resulted in the ▮▮▮▮▮▮▮▮▮▮ noted in the BOP medical records and confirmed in Dr. Chen's Declaration.

Also, *of course* Dr. Chen's Declaration incorporates the language of the Sentencing Guidelines, and §1B1.13(b)(1) in particular, in describing the effects of Mr. Madonna's several conditions. That context is essential; avoiding or ignoring it would not provide assistance to the Court in determining whether Mr. Madonna's conditions satisfy the Guidelines criteria for "extraordinary and compelling reasons."

---

[1] The government's position reflects an unfortunate trend within and outside government in which expertise is rejected because it reaches conclusions that do not conform to an ideological or result-oriented predisposition. *See, e.g.*, Professor Jane Campbell Moriarty (Duquesne University), "The Dangerous Decline of Expertise in Federal Government," *JURIST*, March 7, 2025, available at https://perma.cc/PN3T-XW58; Tom Nichols, *The Death of Expertise – The Campaign Against Established Knowledge and Why It Matters* (Oxford University Press: 2024) (updated and expanded edition).

LAW OFFICES OF
**DRATEL & LEWIS, P.C.**

Hon. Cathy Seibel
United States District Judge
Southern District of New York
August 6, 2025
Page 4 of 11

The government also seeks to minimize the bases for Mr. Madonna's motion, claiming "*the defendant* identifies several medical issues that, in his view, warrant his immediate release from prison." Gov't Opp., at 4 (emphasis added). In fact, those "several medical issues" are identified in Mr. Madonna's voluminous *BOP medical records* and discussed in detail in Dr. Chen's Declaration. *See also* Initial Memo, at 6-28, 4-6.

Moreover, the fact that Dr. Chen did not examine or speak to Mr. Madonna does not diminish either her expertise or her analysis and conclusions. It is commonplace for courts to admit expert testimony (or submissions) based solely on review of records created by other medical professionals.

For example in *Walker v. Soo Line R. Co.*, 208 F.3d 581 (7th Cir. 2000) the Seventh Circuit held that the district court's exclusion of a doctor's testimony based upon medical records was an unacceptable exercise of discretion, finding that "[m]edical professionals have long been expected to rely on the opinions of other medical professionals in forming their opinions." *Id.* at 588. *See also Birdsell v. United States*, 346 F.2d 775, 779–80 (5th Cir.1965) ("[w]ith the increased division of labor in modern medicine, the physician making a diagnosis must necessarily rely on many observations and tests performed by others and recorded by them"); *Yellow Flag Client Funding Solutions Corp. v. Crim*, 943 F. Supp. 2d 849 (N.D. Ill. 2013) (witness qualified to offer expert medical testimony notwithstanding that the expert had not examined the plaintiff).

Also, here Dr. Chen based her conclusions and prognosis on the impact of the constellation of Mr. Madonna's medical conditions, and their collective adverse effect on his future health. The government, however, despite ample opportunity to provide Mr. Madonna's BOP medical records to an expert, chose instead to substitute its wholly unqualified opinions for that of an estimable medical professional who provided services to Mr. Madonna's counsel *without compensation*. *See* Dr. Chen's Dec., at ¶ 5.

**II.     *The Government's Selective Quotations from Mr. Madonna's
         BOP Medical Records Are Misleading and Distort Their Full Import***

      **1.     *The Government's Quoted Passages from Mr. Madonna's
              BOP Medical Records Are Edited to Omit Important Portions***

The government's selective citations to the most recent BOP medical records for Mr. Madonna (effectively, since June 6, 2025, the date the motion was filed) not only distort the full context of Mr. Madonna's medical history the past five years, set forth in his Initial Memo, at 15-28, but are also, through dubious editing, misleading.

**LAW OFFICES OF**
**DRATEL & LEWIS, P.C.**

Hon. Cathy Seibel
United States District Judge
Southern District of New York
August 6, 2025
Page 5 of 11

For example, the government quotes a July 1, 2025, entry as follows:

[REDACTED]

Gov't Opp., at 5.

Yet the entire entry includes important information carefully and deliberately excised by the government, namely – with the portion deleted by the government in italics [REDACTED]

[REDACTED] Exhibit A, at 3.[2]

Thus, the government inexcusably removed that part of the report from Mr. Madonna's [REDACTED] that would substantiate the grounds for his motion, and defeat the government's opposition. [REDACTED]

The government also notes an April 17, 2025 [REDACTED] (recounted as well in Mr. Madonna's Initial Memo, at 9), and a subsequent June 3, 2025 entry stating, [REDACTED]

Id. at 57.

The government further cites an entry that [REDACTED] without recognizing that the staff at FMC Rochester did not have any contact with Mr. Madonna prior to his arrival there in July 2, 2024, and certainly did not interact with him in 2019.

Conversely, the report by Dr. Jason Krellman, Ph.D, ABPP (CN RP), a Board certified clinical neuropsychologist who examined Mr. Madonna August 14, 2019, [REDACTED], and which is reflected in a more discerning review of his responses as memorialized in the BOP

---

[2] The government did not number the pages for Exhibit A. The page numbers provided herein correspond to the page number calculated for the cited pages.

| | |
|---|---|
| LAW OFFICES OF<br>**DRATEL & LEWIS, P.C.** | Hon. Cathy Seibel<br>United States District Judge<br>Southern District of New York<br>August 6, 2025<br>Page 6 of 11 |

medical records. *See also* Initial Memo, at 12-15. A copy of Dr. Krellman's 2019 report is attached hereto as Exhibit 1 (as it was inadvertently omitted as an Exhibit to Mr. Madonna's Initial Memo); **post**, at 8 (discussing BOP medical records indicating ▇ ).

Also, the government's insistence that Mr. Madonna "raised similar concerns about medical care at sentencing[,]" Gov't Opp, at 12, is specious because *sentencing occurred five years ago*, and Mr. Madonna's motion (and BOP medical records) raise very specific, additional medical issues that were neither present nor presented to the Court at sentencing.

In that context, the government fails to mention the June 7, 2025, notation by the attendant nurse at FMC Rochester that Mr. Madonna



Gov't Exhibit A, at 12 (emphasis added).

That description, plus the ▇▇▇▇▇, *see* Gov't Exhibit A, at 20, completely repudiates the government's contention – not only obtuse, but also devoid of support or any professional competence – that "the ailments of which Madonna complains are to be expected, or at least unsurprising, in the case of an 89-year-old male like Madonna." Gov't Opp., at 8. Instead, the legion of conditions listed by the attendant nurse fully corroborate Dr. Chen's Declaration.

### 2. The Government Incorrectly Contests Certain Aspects of Dr. Chen's Declaration

The government also asserts that "certain facts contained in Dr. Chen's Declaration are simply wrong," including that Mr. Madonna "is not ▇▇▇ or that Mr. Madonna suffers from ▇▇ Gov't Opp., at 9 n.3. Again, though, that claim is a product of simply not confronting the full trajectory of Mr. Madonna's BOP medical records.

For instance, regarding Mr. Madonna's ▇▇ , an April 29, 2025, entry notes that Mr. Madonna ▇▇▇▇▇▇▇▇ Gov't

LAW OFFICES OF
**DRATEL & LEWIS, P.C.**

Hon. Cathy Seibel
United States District Judge
Southern District of New York
August 6, 2025
Page 7 of 11

Exhibit A, at 28 (emphasis added). ███████████████████████
████████████████

      That reality is exceedingly far from the government's misleading depiction. Indeed, it suggests that Mr. Madonna's failure to use a ███████ is not because he can, but because he fails to recognize that he *should* ████████████████████████.
████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████

The following chronology set forth in the BOP medical records upon Mr. Madonna's arrival at FMC Rochester, illustrates the scope of the problem when combined with ███████████:

- ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

- ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

      Thus, the government's calculated editing of (and/or ignoring) Mr. Madonna's BOP

LAW OFFICES OF
**DRATEL & LEWIS, P.C.**

Hon. Cathy Seibel
United States District Judge
Southern District of New York
August 6, 2025
Page 8 of 11

medical records presents, in essence, a fictionalized version of his condition.[3] Regarding ▮▮▮▮, the inventory of Mr. Madonna's medical issues compiled June 7, 2025, set forth **ante**, at 6, includes ▮▮▮▮



---

[3] The government's misleading references extend even to its quotations from Dr. Chen's Declaration. While the government, in its opposition letter at 9 n.3, quoted Dr. Chen's comment that Mr. Madonna was ▮▮▮▮ from her concluding summary, at ¶ 16, earlier in her Declaration Dr. Chen provided a more complete description of Mr. Madonna's ▮▮▮▮

LAW OFFICES OF
**DRATEL & LEWIS, P.C.**

Hon. Cathy Seibel
United States District Judge
Southern District of New York
August 6, 2025
Page 9 of 11

████████████████████████████████████████

Consequently, the government's efforts to dispute Dr. Chen's Declaration are without foundation.

    3.    ***Mr. Madonna's Complaints Regarding █████ Are Well-Documented***

The government also disputes that Mr. Madonna suffers from – and/or complains of – the symptoms of █████. Gov't Opp., at 10. *See also* Initial Memo, at 41-54. While it is expected that the BOP medical records would not link Mr. Madonna's symptoms to █████ – since BOP does not recognize █████ (which does not yet have a standardized, reliable diagnostic tool or test) – Mr. Madonna has regularly complained of problems associated with █████ since he first contracted █████ in April 2020.

For example, in an April 30, 2021, entry, medical staff noted Mr. Madonna's █████████████████████████████████████████ Medical Records, at 2-3.

Four years later – just three months ago – Mr. Madonna complained May 13, 2025, of ████████████████████████████ Gov't Exhibit A, at 24.

█████████████████████████████████████████

*Id. See also* Initial Memo, at 17.[4]

---

[4] The government points out that Dr. Chen does not mention █████ in her Declaration, *see* Gov't Opp., at 10, but that only reinforces her credibility and integrity. As discussed in the Initial Memo, at 50-51, clinicians have not yet developed a diagnostic methodology (or treatment) for █████ that has been met with approval by the medical community. Thus, Dr. Chen did not have a basis for including a discussion of █████ in her Declaration.

LAW OFFICES OF
**DRATEL & LEWIS, P.C.**

Hon. Cathy Seibel
United States District Judge
Southern District of New York
August 6, 2025
Page 10 of 11

### 4. *The Cases Cited by the Government Are Inapposite*

The cases cited by the government are inapposite, and not only because of the *sui generis* nature of §3582 motions, and the "extraordinary and compelling reasons" peculiar to each movant. For example, in *United States v. Carrasco*, No. 19 Cr. 475 (NRB), 2023 WL 375183 (S.D.N.Y. Jan. 24, 2023), the defendant had disclaimed any physical health problems when interviewed for his Pre-Sentence Report, and did not offered evidence to support his claim of heart problems. *Id*. at *2.

In *United States v. Amuso*, No. 90 Cr. 446, 2023 WL 5153425 (E.D.N.Y. Aug. 10, 2023), the Court found "extraordinary and compelling reasons" were absent because "medical records reflect that the BOP is managing [defendant's] medical conditions adequately by providing him with medications, x-rays, and medical appointments upon his request." *Id*. at *3.

Here, in contrast with the circumstances in *Carrasco*, Mr. Madonna has submitted extensive evidence of his medical problems, and their severity. Also, unlike in *Amuso*, Mr. Madonna's BOP medical records establish that he has *not* had adequate access to testing and treatment for his conditions, including, as listed **ante**, at 6, an ███████████████

*See also* Initial Memo, at 18-28.

### III. *The Requirement of a Mandatory Minimum Sentence of Life Imprisonment Without Parole Foreclosed Any Genuine Evaluation of the §3553(a) Factors*

The government's argument that the Court performed a customary analysis of the §3553(a) is without merit. *See* Gov't Opp., at 10. At sentencing, the Court was constrained by the mandatory minimum sentence of life without imprisonment for Mr. Madonna due to his conviction on Count Three. Thus, the Court could not have considered the §3553(a) factors substantively even if it wanted to do so.

Regarding whether Mr. Madonna currently presents a danger to the community, the governnment's position, *see* Gov't Opp., at 3, is frozen in time *more than* five years ago. Mr. Madonna's competency then is no longer relevant ███████████████, and he is not capable of resuming criminal activity regardless his intention.

Nor is Mr. Madonna the "Acting Boss of the Luchese Family," notwithstanding the government's repetition of that allegation. *See* Gov't Opp., at 7 n.2, 9, and 9 n.4. As set forth in Mr. Madonna's Initial Memo, at 90, even the government was aware prior to trial that Mr.

LAW OFFICES OF
**DRATEL & LEWIS, P.C.**

Hon. Cathy Seibel
United States District Judge
Southern District of New York
August 6, 2025
Page 11 of 11

Madonna no longer occupied such position.

      Thus, as detailed in Mr. Madonna's Initial Memo, at 84-94, a fresh examination of the §3553(a) factors in light of current circumstances provides further support for Mr. Madonna's motion to modify his sentence. While the government concentrates nearly exclusively on the offense conduct, that is not the only consideration within the §3553(a) factors – which are not ordered in any hierarchy, *see United States v. Booker,* 543 U.S. 220, 304-05 (2005) (Scalia, J., *dissenting in part*) – and those other factors all support granting Mr. Madonna's motion.

      Accordingly, it is respectfully submitted that Mr. Madonna's motion to modify his sentence be granted.

Respectfully submitted,

Joshua L. Dratel
Andrew G. Patel

*Attorneys for Defendant
Matthew Madonna*

JLD/
Encl.