UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA

       -v.-                                  ORDER

MATTHEW MADONNA,                    No. 17-CR-89-3 (CS)

                Defendant.
--------------------------------------------------------x

Seibel, J.

      Before the Court is Defendant Matthew Madonna's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), (ECF Nos. 1315-17), the Government's opposition thereto,[1] and Defendant's reply, (ECF No. 1322). Defendant was sentenced principally to life imprisonment on his conviction for racketeering conspiracy; a concurrent term of ten years' imprisonment on his conviction for conspiracy to commit murder in aid of racketeering; a concurrent term of mandatory life imprisonment on his conviction for murder in aid of racketeering; and a consecutive term of life imprisonment on his conviction for use of a firearm in connection with a crime of violence resulting in death (ECF No. 1095.) He has served about eight years and four months.

      Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the 18 U.S.C. § 3553(a) factors, reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 also permits a sentence reduction for extraordinary and compelling reasons, and

---

[1] The Government did not file its opposition on the docket, advising the Court that it would do so after conferring with defense counsel about redactions. The parties should complete that consultation so that the Government can file its July 9, 2025 letter, redacted as appropriate, no later than October 27, 2025.

additionally requires that the Defendant not be a danger to the safety of any other person or the community. *See* U.S.S.G. § 1B1.13(a), p.s. The Policy Statement, as amended, *see United States v. Feliz*, No. 16-CR-809, 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023),[2] identifies as extraordinary and compelling certain circumstances relating to medical condition, age, family, prison abuse, and unusually long sentences, as well as any other circumstances of similar gravity, *see* U.S.S.G. § 1B1.13(b)(1)-(6). The burden is on the defendant to show that a sentence reduction is warranted. *See United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021).

    Defendant's motion is based primarily on his health. He contends that he suffers from several serious medical conditions that cannot be adequately addressed while he is incarcerated. The Government contends that his situation is not unusual for man about to turn ninety, and notes that he raises no complaints about his medical care at FMC Rochester, the records of which reveal ample medical attention. I will assume for purposes of this motion that Defendant's medical condition is an extraordinary and compelling reason, and I recognize that I have the discretion to grant the motion despite the imposition of a mandatory life sentence. But I decline to do so, based on the § 3553(a) factors and the danger Defendant presents.

---

[2] I agree with the court in *Feliz*, which found that the November 1, 2023 amendments to Policy Statement 1B1.13 have harmonized the Policy Statement with the First Step Act; that *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), therefore does not apply to the new version of Policy Statement 1B1.13; and that "[a]ccordingly, to grant a motion for compassionate release, a court must now, in addition to finding that the other elements of the compassionate release standard are satisfied, also find that granting such relief is consistent with Policy Statement 1B1.13." 2023 WL 8275897, at *4; *see United States v. Corbett*, No. 10-CR-184, 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) ("The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated."). But the outcome here would be the same even under *Brooker* and the old version of 1B1.13.

Defendant was the boss of the Lucchese Crime Family,[3] a murderous and destructive organization that inflicted untold damage on the community. He has a lengthy criminal history of violence and other serious criminal conduct. He shot and killed a man over a heroin deal in 1954. In 1976 he was sentenced to thirty years for a federal heroin conviction.[4] In 2015 he was convicted of racketeering in state court in New Jersey and enterprise corruption in state court in Manhattan.[5] He has never renounced his association with the Mafia. To the contrary, despite his previous convictions, he continued and escalated his involvement. There is every reason to believe that he adheres to the oath of loyalty he took and would renew his criminal conduct if able to do so. As would be expected at his age, he suffers from occasional confusion or lapses of memory, but his records describe this as "mild cognitive impairment"[6] that does not prevent him

---

[3] Although his title was acting boss, a nod to the official boss who has been imprisoned for decades, there was nobody above Defendant Madonna in the day-to-day management of the Lucchese Family.

[4] In 1978 he was sentenced to three years' concurrent time for a false passport application.

[5] Defendant contends that if he credited for his state time, he will have served ten years. Whether he has served eight or ten years does not make a difference to the outcome here.

[6] I am not persuaded by the declaration of Dr. Isabel Chen, who has not examined or tested Defendant. She "suggests that his cognitive impairment has progressed to dementia," (ECF No. 1316 Ex. 1 at 2), based on Defendant's need for help with activities of daily living, but based on her report, that need seems to arise from his physical frailty and limited mobility. The only cognitive events she notes, after reviewing seven-and-a-half years of medical records, are a memory lapse in September 2023; an altered mental state from a transient ischemic attack ("mini-stroke") in April 2024; and an episode of confusion while hospitalized in June 2024.

from communicating – he responds appropriately to his providers and talks on the phone from prison – and would not prevent him from passing orders to others.[7]

But even if I were convinced that Defendant is wholly incapable of resuming any criminal activity, and thus presented no danger to the community, I still would not grant the motion, because the § 3553(a) factors weigh heavily against release. The nature and circumstances of the offense – leading a wide-ranging, violent racketeering enterprise – are incredibly serious. His history and characteristics are that of a devoted lifelong criminal. Eight-plus years (or ten) for offenses of this seriousness – including murder – simply does not amount to just punishment, even if some of that time was served during the COVID pandemic. Indeed, release of a recidivist mob boss after less than nine years following conviction for murder and racketeering would promote disrespect for the law.

The cases to which Defendant points, in which defendants with similar histories of violence and/or Mafia association were granted release, are inapposite because they involved defendants who had already served decades. Likewise, the comparison to co-defendant Joseph Datello is also inapt, as his cognitive issues were much more serious and well documented, and because, while his history and offenses were extremely serious, he was not convicted of murder.

As I have previously noted in denying release to a co-defendant, it is tragic when anyone dies in prison. But one has to expect that fate when one leads a crime family and orders a murder in one's late seventies, after a lifetime of criminality and loyalty to the Mafia.

---

[7]Defendant notes that the Government described him as "on the shelf," meaning out of power. That a mobster is "on the shelf" while imprisoned does not mean he cannot resume his activities once free. Indeed, having served time can be viewed as a badge of honor, and Madonna ascended to the leadership of the Family after serving a long federal term.

For the reasons stated above, the motion is denied.

Dated: October 6, 2025
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.